Octavio Cardona-Loya II, SBN 255309
3130 Bonita Road, Suite 200-B
Chula Vista, CA 91910
vito@efaganlaw.com
Phone: 619-656-6656; Fax: 775-898-5471
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOTI BURTZOS, et al., | Case No.: 09-CV-2027 W WMc |
| Plaintiffs, | **Plaintiffs' Opposition to Defendant Countrywide Home Loans' Motion to Dismiss** |
| v. | |
| COUNTRYWIDE HOME LOANS, INC., et al., | Date: March 22, 2010<br>Time: 10:30 a.m.<br>Courtroom: 7 |
| Defendants. | The Hon. Thomas J. Whelan |

## I. INTRODUCTION

Defendant COUNTRYWIDE HOME LOANS, INC. ("CHL") contracted with Fannie Mae, as financial agent of the U.S., to provide foreclosure prevention services intending to benefit qualified homeowners with affordable loan modifications. The government allocated $1,864,000,000 to CHL as an incentive to modify loans according to the Home Affordable Modification Program ("HAMP"). CHL however is refusing to comply with the terms of the contract of which Plaintiffs Foti and Belinda Burtzos are third-party beneficiaries.

////

////

## II. ISSUES

**A.** Whether Transferring this Action Would be in the Interests of Justice When There is No Nexus Between Plaintiffs and the District of Columbia and Injustice Would Result.

**B.** Whether Plaintiffs Are Qualified Borrowers When They Satisfy the Criteria Under HAMP Guidelines and Plead Sufficient Facts Showing A Plausible Claim for Breach of the Contract.

**C.** Whether Plaintiffs, Qualified Borrowers Under HAMP, Are Intended Beneficiaries Under the Contract Between CHL and Fannie Mae.

## III. STATEMENT OF FACTS

On April 17, 2009, CHL entered into a Servicer Participation Agreement (the "Contract") for the Home Affordable Modification Program (HAMP) with Fannie Mae. HAMP is part of the Emergency Economic Stabilization Act of 2008. Complaint at ¶¶14-15. CHL agreed to provide eligible borrowers with loan modifications to avoid foreclosure. *Id.*, Exhibit 1. Plaintiffs attempted to obtain a modification of the Loan; both they and their loan qualify under HAMP. *Id.* at ¶¶26-29. CHL, however, has yet to provide Plaintiffs with a compliant modification.

## IV. ARGUMENT

**A. Transferring this Action Would Not be in the Interests of Justice as There is No Nexus Between Plaintiff and the District of Columbia and Injustice Would Result.**

"[A] party seeking to avoid enforcement of [a forum selection clause] is ... entitled to have the facts viewed in the light most favorable to it, and no disputed fact should be resolved against that party until it has had an opportunity to be heard." *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004), internal quotations omitted. There is a split of authority in determining whether a federal court should enforce a contract's forum selection clause against nonsignatories. Some jurisdictions refuse to bind nonsignatories to such a clause, regardless of how closely related the nonsignatories are to the alleged conduct.

Page 2 - 09-CV-2027 W WMc
Plaintiffs' Opposition to Defendant Countrywide Home Loans' Motion to Dismiss

*See Dayoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1296 (3rd Cir. 1996) and *APA Excelsior III, L.P. v. Premier Technologies, Inc.*, 49 F.Supp.2d 664, 671 (S.D. NY 1999).

Other jurisdictions bind nonsignatories when the party is "closely related" to the dispute such that it becomes "foreseeable" that it will be bound. *Hugel v.Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993). However, a forum selection clause should not be enforced when there is a "serious inconvenience in litigating in the selected forum so as to deprive that party of a meaningful day in court." *See Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir.1984).

Here, Plaintiffs will be seriously inconvenienced by transferring the action to the District of Columbia. Plaintiffs will either have to obtain separate counsel admitted to practice in that jurisdiction or have current counsel associate *pro hac vice* with local counsel. It is also possible that Plaintiffs might not find a willing attorney in the District of Columbia and will have no recourse whatsoever. Plaintiffs will also be prejudiced in presenting their case because witnesses will be outside the subpoena power of the court. Moreover, binding Plaintiffs to the selection clause is not foreseeable: Plaintiffs, their loan, and their property are located in California. CHL's breach of the Contract also occurred in California. CHL is further headquartered in California. Requiring borrowers to incur additional expenses and lose valuable rights will deprive them of their day in court.

**B. Plaintiffs Are Qualified Borrowers Under the Contract as They Satisfy the Criteria Under HAMP Guidelines and Plead Sufficient Facts Showing A Plausible Claim for Breach of the Contract.**

The Guidelines provide at page two the borrower qualification terms: the home must (1) be a single family 1-4 unit property, (2) be the borrower's primary residence, (3) not be investor-owned, vacant or condemned, and (4) the first lien loan must have an unpaid principal balance (prior to capitalization of arrearages) equal to or less than $729,750. Complaint, *Exhibit 2*. Plaintiffs alleged facts showing they meet the criteria for qualification under the Contract. Complaint at ¶¶26-29.

CHL correctly points out that a modification is subject to investor approval. It should be noted neither CHL nor the current investor have indicated that the Plaintiffs' loan cannot be modified. Also, the procedures to review a loan for modification may be convoluted; yet the onus to perform those procedures is on the servicer. In its motion, CHL is asking Plaintiffs to plead with greater specificity; yet Plaintiffs are unaware what measures have been taken in the review of their loan modification under HAMP, if any.

Thus, Plaintiffs continue to meet the criteria for qualification under HAMP and plead sufficient facts showing a plausible claim for a breach of the Contract.

**C. Plaintiffs, as Qualified Borrowers Under HAMP, Are Intended Beneficiaries Under the Contract Between CHL and Fannie Mae.**

"A contract, made expressly for the benefit a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code §1559. Here, the Contract benefits a specific and limited class of borrowers, including Plaintiffs, who can seek enforcement of the Contract.

This Judicial District held that a plaintiff-borrower under HAMP sufficiently stated a plausible claim for a breach of contract under a third-party beneficiary theory; the factual and legal claims are nearly identical to this action. *Reyes v. Saxon Mortgage Services, Inc.*, (S.D. Cal. Nov. 5, 2009, No. 09cv1366 (DMS)) __ F.Supp.2d __ at *2 [2009 WL 3738177] (holding that, "Contrary to Defendant's assertion, Plaintiff has alleged sufficient facts to support his third party beneficiary theory.").

For an action involving third-party beneficiaries under a government contract to proceed depends upon an analysis of the following three critical cases:

**i.** ***Shell v. Schmidt*, 126 Cal.App.2d 279 (1954)**

The *Shell* plaintiffs filed suit as third-party beneficiaries alleging a breach of contract between the defendant and the Federal Housing Authority. The defendant was to build homes for sale to veterans. In return, the defendant received priority in securing materials needed to build the homes. Relying on Cal. Civ. Code §1559, the *Shell* court held:

"Once it is established that the relationship between the contractor and the government is contractual, it follows that veterans purchasing homes, that is, the class intended to be protected by the contract, are third party beneficiaries of that contract. As already pointed out, the statute and the regulations passed thereunder resulting in the contract were passed to aid and assist veterans and for their benefit. Purchasing veterans constitute the class intended to be benefitted, and the contract must therefore be for their benefit." *Shell*, 126 Cal.App.2d at 290.

The *Shell* court concluded the plaintiff-veterans could maintain their cause of action as third-party beneficiaries. *Id.*

### ii. *Martinez v. Socoma Companies, Inc.*, 11 Cal.3d 394 (1974)

The Plaintiffs in *Martinez* filed suit as third-party beneficiaries alleging a breach of contract between the defendant and the Secretary of Labor. The defendant contracted to hire and train unemployed residents of a "Special Impact Area" in Los Angeles. In return, the defendant would receive government funds. Although approving *Shell*, the *Martinez* court placed greater weight on the *Restatement of Contracts* rather than the common law principles encompassed in Cal. Civ. Code §1559 applied in *Shell*.

The *Martinez* court held that the issue of plaintiffs' standing as third-party beneficiaries depended on the intent of the parties as manifested by the contract and the circumstances surrounding its formation. *Martinez,* 11 Cal.3d at 401-402. The *Martinez* court noted upon a breach, defendant Socoma would refund paid monies to the government. The government would lose as result of the breach as opposed to people to be trained and employed. The *Martinez* court further noted that third-party actions could affect the administrative procedures in place to address disputes under the contract. Ultimately, the *Martinez* plaintiffs were deemed incidental beneficiaries without standing. *Id*. at 402.

### iii. *Zigas v. Superior Court,* 120 Cal.App.3d 827 (1981)

The *Zigas* plaintiffs filed suit alleging that their landlord collected excessive rents in violation of a financing agreement. The plaintiffs' landlord received over $5 million in financing as part of the National Housing Act. In turn, the landlord had to adhere to the HUD-approved schedule of rents. After comparing and distinguishing *Shell* and *Martinez*,

the *Zigas* court held the plaintiffs to be third-party beneficiaries with standing.

The *Zigas* plaintiffs mirrored the situation of the *Shell* plaintiffs.  The *Zigas* renters suffered damages as *Shell*'s veterans had, there were no administrative procedures to address disputes as in *Martinez*, and the contract between the landlord and HUD was "narrow and specific: to provide moderate rental housing for families with children; in *Shell*, to provide moderate priced homes for veterans." *Zigas*, 120 Cal.App.3d at 837-838.

The *Zigas* court noted the "requirement of HUD approval of rent increases could only benefit the tenants. Furthermore, even the most cursory review of the statutes and regulations which resulted in the contract … leads to the conclusion that the tenants constitute the class which Congress intended to benefit." *Id.* at 835.

### iv. The Contract Between CHL and Fannie Mae

The Contract is entitled "COMMITMENT TO PURCHASE FINANCIAL INSTRUMENT and SERVICER PARTICIPATION AGREEMENT…." and is easily bifurcated.  The "Servicer Participation" section spells out CHL's obligations toward qualified borrowers.  The "Commitment to Purchase" portion specifies Fannie Mae's obligations toward the Servicer vis-à-vis modified loans.  If the Servicer does not modify a loan, the obligation of Fannie Mae to purchase does not arise.  The more significant of the two sections is the Servicer Participation part.

Plaintiffs are third-party beneficiaries of the Contract; the Contract expressly states that "[CHL] shall perform the loan modification and other foreclosure prevention services described in … the Program guidelines and procedures issued by the treasury…." Complaint, *Exhibit 1* at p. 2, ¶1A.

Attached to the Complaint as Exhibit 3, the Summary of Guidelines clearly states the Contract's purpose is to provide foreclosure prevention services at paragraphs one and four:

> "Making Home Affordable ***will offer assistance to as many as 7 to 9 million homeowners***, making their mortgages more affordable and helping to prevent the destructive impact of foreclosures on families, communities and the national economy…

"The *Home Affordable Modification* program will help up to 3 to 4 million at-risk homeowners avoid foreclosure by reducing monthly mortgage payments." The "program guidelines … are expected to become standard industry practice in pursuing affordable and sustainable mortgage modifications."

Like *Shell* and *Zigas*, the Contract is narrow and specific. It details the procedures servicers like CHL *shall* follow to determine which borrowers qualify for a HAMP loan modification. Qualifying borrowers constitute the class CHL and Fannie Mae intended to protect. As in *Shell* and *Zigas*, Plaintiffs are plaintiff-borrowers that will suffer directly from a breach of the Contract. If CHL modifies the loan, Plaintiffs keep their home. If CHL refuses to comply with the explicit requirements of the Contract, Plaintiffs will lose their home. The benefit of the Contract cannot be any more apparent.

There are no administrative procedures set forth to address the breach of the Servicer Participation section of the Contract. There is no "watch dog" in place to ensure CHL complies with the terms of the Contract. As the party suffering from the breach, qualified borrowers have no recourse other than through the courts to enforce the provisions of the Contract as third-party beneficiaries; there is no other forum to seek redress. Holding otherwise would render the Home Affordable Modification Program ineffectual.

As qualified borrowers, the Court should follow the holding in *Reyes* and confer Plaintiffs third-party beneficiary status to enforce the Contract's terms.

## V. CONCLUSION

Defendant CHL contracted with the government to provide foreclosure prevention services to qualified borrowers. In doing so, CHL and Fannie Mae intended to protect a limited class of borrowers which includes Plaintiffs. As intended beneficiaries, they may bring a claim for breach of contract. Based on the foregoing, Plaintiffs respectfully request the Court deny CHL's Motion to Dismiss in its entirety. In the alternative, Plaintiffs seek leave to amend.

Dated: March 3, 2010            /s/Octavio Cardona-Loya II_____
                                Octavio Cardona-Loya II
                                Attorney for Plaintiffs